The petition was as follows:
The plaintiffs complain and allege:
1. That on 27 February, 1895, they were residents and citizens of the city of Winston, in Forsyth County, in the State of North Carolina, and are now residents and citizens of said city, county and State.
2. That on said day in February, 1895, they were doing business in said city as printers, under the firm name of M. I. J. C. Stewart.
3. That on said day in February, 1895, in compliance with the provisions of chapter 20 of the Public Laws passed by the General Assembly of North Carolina at its session of 1895, a copy of which act is hereto attached, marked "Exhibit A," and asked to be taken as a part of this complaint (see ch. 20, Laws 1895), the defendant, State of North Carolina, entered into with the plaintiffs the contract, a copy of which is hereto attached and marked "Exhibit B," and asked to be taken as a part of this complaint.
4. That immediately upon the ratification of the said contract by the General Assembly of North Carolina the plaintiffs entered upon their duties as Public Printers, and in order to comply with the terms of said contract the plaintiffs made an outlay of something like six thousand dollars in the purchase of additional machinery, type and other equipments, so that the work for the State of North Carolina might be done efficiently and speedily, and employed a corps of printers, pressmen, proof readers and other employees for (626) the purpose of meeting every demand that their engagement with the defendant might make upon them, and the plaintiffs have always been ready, anxious and able to comply fully with the terms of the said contract, and are now so ready, anxious and able to fully perform the contract.
5. That on the day on which the contract was ratified by the General Assembly of North Carolina the plaintiff M. I. Stewart called upon the heads of the State departments in the city of Raleigh and notified them that the plaintiffs were prepared to execute their contract and to do any work needed to be done by any of the departments; and, at divers times since, the plaintiffs have notified and assured the said officials, both in person and by letter, that they were prepared and anxious to do all the printing, ruling and binding required by any of the State departments and institutions; that soon after 9 *Page 386 
March, 1895, the plaintiffs mailed to the heads of many of the institutions notices citing the provisions of their contract with the State and asking for the printing of the institutions of the State; that receiving information that some of the departments and institutions were having printers other than the plaintiffs to do the work required, the plaintiffs, on 5 July, 1895, mailed to all the departments and institutions of the State copies of the notice hereto attached and marked "Exhibit C."
6. That although the plaintiffs have at all times been able and anxious to fulfill their contract, the defendant has violated its contract with the plaintiffs, greatly to the damage of the plaintiffs, in that it has in many instances, through its officers, refused to allow the plaintiffs to do the printing, ruling and binding required by the State, but it has employed other printers to do said work, thus entailing (627) great loss on the plaintiffs, as well as depriving them of their reasonable and legitimate profits assured to them by the terms of said contract.
6. That it is impossible, from the nature of the case, for the plaintiffs, without the power of compelling the attendance of witnesses and the production of papers, to ascertain how much of the printing, ruling and binding required by the various departments and institutions of the State has been denied to them and awarded to other printers; but the plaintiffs do allege that, notwithstanding the lapse of eight months since their selection as Public Printers, they have received no requisitions for any printing, ruling or binding from the following State departments and institutions: State Penitentiary, University of North Carolina, the Eastern Hospital, the Colored Orphan Asylum, the North Carolina Agricultural Experiment Station, the College of Agriculture and Mechanic Arts, the Agricultural and Mechanical College, the Colored State Normal Schools located at Fayetteville, Elizabeth City, Franklinton, Goldsboro and Plymouth; and they allege the work required by these departments and institutions has been done by others. And the plaintiffs do further allege that, without noticing several small orders given to other printers, the following State departments and institutions have at times violated the said contract by employing other printers than the plaintiffs to do the printing, ruling and binding required to be done by the State, to-wit: The Deaf and Dumb and Blind Institution, the Department of State, the Department of Agriculture; and the plaintiffs believe that other departments and institutions have violated the contract by employing other printers.
7. That the Secretary of State, in one instance, since 9 March, *Page 387 
1895, employed Messrs. Edwards Broughton to reprint two volumes of the Supreme Court Reports, and said Edwards Broughton received in payment therefor from the State Treasurer about (628) one thousand dollars; that an immense amount of printing, pamphlet binding, circular and other work is required to be done by the North Carolina Agricultural Experiment Station, the station having issued as many as 246,900 pamphlets during the year ending with 30 June, 1895, none of which have the plaintiffs been allowed to do; that the Department of Agriculture, having in June, 1895, bought a printing press, is now operating it in its own building and doing much of the printing required by this department; that during the month of July, 1895, the said Department of Agriculture ordered from a firm in New York City one million and a half of guano tags, contrary to the provisions of said contract, and procured the printing required to be on said tags to be done by a printing establishment in New York City.
9. That the plaintiffs believe that the contract has been violated in many other instances and ways now unknown to the plaintiffs.
10. That the plaintiffs have been informed by the heads of several of the departments above named that they have refused to allow the plaintiffs to do the printing, ruling and binding required by their departments, for the reason that they did not consider that the work of their departments or institutions was covered by the aforementioned contract, and that they were free to award the printing and other work to any printers that they might choose, while the plaintiffs are advised and believe that their contract entitles them to all of the printing, ruling and binding of all of the departments and institutions above mentioned, as well as of all the other State departments and institutions.
Wherefore the plaintiffs pray that this honorable Court (629) may construe the said contract and declare the rights of the plaintiffs thereunder; that a trial of the issues of fact that may arise may be had by a jury or a referee appointed by this honorable Court; that the damages that the plaintiffs have sustained by the breaches by the defendant of the contract may be ascertained, and that the plaintiffs may recover of the defendant the amount of damages so ascertained to have been suffered by them, and for such other and further relief as they may be entitled to.
We are not prepared to say that a claim for damages against *Page 388 
the State, arising out of a failure and refusal of one of its servants to perform a statutory duty imposed upon him, can be filed in this Court. The petition sets forth that some of the State officers and heads of public institutions, who have refused and failed to have the printing and binding of their departments and institutions done by the plaintiffs under their contract with the State, have done so under a claim of discretion allowed to them under the law on this subject; and it was stated on the argument that a considerable quantity of such work was being withheld from the plaintiffs and would be withheld until this Court should decide whether or not the plaintiffs were entitled to the whole of the public printing and binding. The matter, then, has become a quasi public question, is of importance to the several departments of the State Government, and under (630) the precedents of this Court (many of them being cited and commented on in the concurring opinion of Furches, J., in the case of Farthing v. Carrington, 116 N.C. 315) we have concluded to give our construction to the act concerning the public printing (Laws 1895, ch. 20). We are requested to do this also in the petition of the plaintiffs.
Section 1 of the act provides: "That all printing and binding required by the State shall be let by contract," etc., and there is nothing in any subsequent part of the act to limit or qualify this plain language. The plaintiffs' contract with the State to do the work is admitted, and under the contract they are entitled to do all the printing and binding and ruling, and work incident thereto, which may be required by any and all of the State departments and by any and all of its public institutions.
As a remedy for the plaintiffs, in connection with their claim for damages by reason of the matters mentioned in their petition, it may be that the General Assembly, after hearing proof through one of its committees, may make to the plaintiffs a proper allowance, if any damage should be shown.
Petition Dismissed.